# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Sandra Herrera,

      Plaintiff

v.

Florence McClure Women's Correctional
Center Facility, et al.,

      Defendants

Case No.: 2:23-cv-01397-JAD-BNW

**Order Granting Defendants' Motion for
Summary Judgment and Closing Case**

[ECF No. 28]

Former Nevada inmate Sandra Herrera sues various staff members at the Florence

McClure Women's Correctional Center (FMWCC) for deliberate indifference to her medical

needs in violation of her Eighth Amendment rights.  She claims that the defendants improperly

treated her hernia condition, concealed abnormal pap-smear results, and failed to arrange a

timely biopsy before she was paroled.  The defendants move for summary judgment, arguing that

Herrera's claim is procedurally barred because she failed to exhaust her administrative remedies

and that, regardless, they are shielded from suit by the doctrine of qualified immunity.  I assume

without deciding that Herrera properly exhausted her claims.  But because the defendants have

established that they are entitled to qualified immunity, I grant summary judgment in their favor

on that basis and close this case.

**Background**

**A.    Herrera is diagnosed with a hernia, and her symptoms worsen until she has emergency surgery to remove it.**

Herrera claims that in May 2020 she began experiencing "extreme pain, complications with bowel movements, and severe discomfort."[1]  In July 2020, Nurse practitioner Betty Omandac submitted a request for a gastroenterologist consultation, noting that Herrera was complaining of an "abdominal (ventral) hernia bulging about a lemon size."[2]  But eight days later, the Utilization Review Panel deferred this request, suggesting that Herrera should "use [an] abdominal binder" to treat her condition instead.[3]  Ten months after that, on May 6, 2021, Omandac submitted a request for a surgical consult for Herrera's hernia.[4]  Herrera underwent an abdominal ultrasound on June 23, 2021, and a "focal mass visualized in the supraumbilical midline abdomen" was discovered.[5]  The next day, nurse practitioner Ella Cordovez submitted a request for Herrera to get a CT scan.[6]  Herrera underwent a CT scan a month later, after which Doctor Joel Schein diagnosed her with a hernia.[7]

In September 2021, Herrera began filing inmate grievances and inmate-request forms, reporting that her symptoms were getting worse.[8]  Cordovez submitted a request for a surgical

---

[1] ECF No. 1. at ¶ 22 (Herrera's verified complaint).

[2] ECF No. 30-1 at 10 (medical referral form, July 21, 2020).

[3] *Id.*

[4] *Id.* at 12 (medical referral form, May 6, 2021).

[5] *Id.* at 20 (medical imaging overview, June 23, 2021).

[6] *Id.* at 15 (medical referral form, June 24, 2021).

[7] ECF No. 30-2 at 3–4 (medical imaging report, July 26, 2021).

[8] *See, e.g.*, ECF No. 28-4 at 46 (informal grievance, received on September 13, 2021) ("My Eighth Amendment continues to be violated.  I have been in serious medical need since 2019."); *id.* at 49 (first-level grievance, received on September 27, 2021) ("A cat scan was performed on

referral for Herrera in October 2021,[9] noting that Herrera reported less pain when using her abdominal binder.[10]  But by June 2022, Herrera kited medical, indicating that her "symptoms ha[d] gotten worse" and that "it [was] becoming harder to push the hernia back in."[11]  Two months later, she called a "man down" to request emergency medical attention[12] and was transported to a hospital where she underwent successful emergency hernia surgery.[13]

**B.    Herrera receives abnormal pap-smear results and sees medical providers for follow-up appointments until her release.**

On June 2, 2022, nurse practitioner Cordovez performed a routine pap smear on Herrera, and the results came back as abnormal.[14]  Herrera received a follow-up exam on September 21, 2022.[15]  She then saw a provider with whom she discussed her pap-smear results about a week

---

6-23-2021.  My 8th Amendment continues to be violated."); *id.* at 54 (informal grievance, received on October 22, 2021) ("My 8th Amendment is violated.  The indifference is manifested by prison medical staff in their response to my serious medical needs."); *id.* at 58 (informal grievance, received on November 15, 2021) ("I am in severe need of a hernia surgery.  This is affecting my daily life, I'm in constant pain which violates my 8th Amendment."); *id.* at 70 (inmate request form, received on November 15, 2021) ("Have I been approved for my hernia surgery?"); *id.* at 73 (inmate request form, received on November 15, 2021) ("May I please have an update on 2 different nurse practitioner appointments that I have been waiting for months on? . . . How much longer do I need to wait?").

[9] ECF No. 38-3 at 6 (medical referral form, October 27, 2021).

[10] *Id.*

[11] *Id.* at 15 (inmate request form, June 26, 2022).

[12] ECF No. 1 at 7, ¶ 37.

[13] ECF No. 38-3 at 38 (Southern Hills Hospital and Medical Center discharge summary).

[14] *Id.* at 44 (FMWCC medical form, June 9, 2022) (noting that Herrera had "atypical squamous cells of undetermined significance (ASCUS) result on her pap smear last 06/02/2022")(cleaned up)).

[15] ECF No. 30-1 at 4 (UNLV Health consent form, September 21, 2022).

1  later,[16] and she saw another provider on December 21, 2022, for evaluation and testing.[17]  Her

2  medical records from that visit note that cervical biopsies were taken, the "specimens" from the

3  biopsy "[were] labelled and sent to [p]athology," and further treatment would be based on those

4  pathology findings.[18]  Despite those records, Herrera contends that the prison "never arranged

5  for" the biopsy.[19]  Herrera was released on parole the following month.[20]

6
7  **C.    Herrera sues FMWCC, NDOC, and various FMWCC administrative and nursing staff for deliberate indifference to her medical needs.**

8         Herrera, represented by counsel, sued FMWCC, NDOC, and medical and administrative

9  staff at FMWCC on a broad range of theories.[21]  A motion to dismiss[22] pared this case down to a

10  single Eighth Amendment deliberate-indifference-to-medical-needs claim for the hernia- and

11  pap-smear-related treatment against individual defendants Timothy Calumpong, Betty Omandac,

12  Ella Cordovez, and Gabriela Najera.[23]  These remaining defendants now move for summary

13  judgment.[24]  They first argue that Herrera's complaint must be dismissed because she failed to

14
15

16  [16] ECF No. 28-3 at 5 (response to inmate request form, September 23, 2022).

17  [17] ECF No. 30-2 at 164 (medical procedure visit notes, December 21, 2022).

    [18] *Id.*

18  [19] ECF No. 38 at 3.  In support of that statement, Herrera cites an exhibit showing that, in
19  November 2022, the Utilization Review Panel approved the medical team's request that Herrera receive a "colposcopy [with] biopsy" at her next doctor's visit.  ECF No. 38-3.

20  [20] ECF No. 28-1 at 3 (NDOC historical bed assignment records). After her release, Herrera
21  received a colonoscopy that returned benign results.  ECF No. 30-2 at 179 (UNLV Medicine visit notes, January 26, 2023).

22  [21] ECF No. 1 at 9–18.

    [22] ECF No. 12.

23  [23] ECF No. 19.

    [24] ECF No. 28.

exhaust her administrative remedies as required by the Prison Litigation Reform Act (PLRA).[25] They alternatively contend that the doctrine of qualified immunity shields them from this suit. Herrera responds that genuine issues of material fact exist as to whether the grievance process was available to her. She contends that the record demonstrates that the defendants knew of her serious medical needs but disregarded them and that the rights they violated were clearly established.[26] She lastly asks the court to delay or deny summary judgment under Federal Rule of Civil Procedure 56(d) so she can perform all the discovery she didn't conduct during the discovery period.[27]

## Discussion

**A.    The defendants enjoy qualified immunity from Herrera's claims because she has not shown that their conduct violated a clearly established right.**

Qualified immunity shields government officials "from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[28] "A government official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[29] The burden of showing that the right at issue was clearly established at the time of the incident falls on the plaintiff.[30] She need not

---

[25] *Id.* at 6–8.

[26] ECF No. 38 at 12.

[27] *Id.* at 22.

[28] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

[29] *Id.* at 741 (cleaned up).

[30] *Robinson v. York*, 566 F.3d 817, 826 (9th Cir. 2009).

identify a case "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."[31] "If the law did not put the [government actor] on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate."[32]

The central dispositive inquiry for finding a right "clearly established" is "whether it would be clear to a reasonable [government actor] that his conduct was unlawful in the situation he confronted."[33] "To be clearly established, a right must be sufficiently clear that *every* reasonable official would have understood that *what he is doing* violates that right."[34] A defendant is entitled to qualified immunity when no "precedent[] 'squarely governs' the facts here," meaning that the court "cannot say that only someone 'plainly incompetent' or who 'knowingly violate[s] the law' would have . . . acted as [the officials] did."[35] As the Ninth Circuit put it just a few months ago in *DeFrancesco v. Robbins*, "the 'contours' of the right must be 'sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'"[36]

---

[31] *Id.*

[32] *Saucier v. Katz*, 533 U.S. 194, 202 (2001); *see also Pearson v. Callahan*, 555 U.S. 223, 245 (2009) (relaxing the *Saucier* framework for analyzing qualified immunity and holding that summary judgment should have been granted to officers because the unlawfulness of their conduct was not clearly established).

[33] *Saucier*, 533 U.S. at 202.

[34] *Hamby v. Hammond*, 821 F.3d 1085, 1090 (9th Cir. 2016) (quoting *Taylor v. Barkes*, 575 U.S. 822, 825 (2015)) (emphasis in *Hammond*).

[35] *Id.* at 1091.

[36] *DeFrancesco v. Robbins*, 136 F.4th 933, 939 (9th Cir. May 7, 2025) (quoting *Kisela v. Hughes*, 584 U.S. 100, 105 (2018)).

### 1.    Herrera has not shown that it was clearly established that her hernia-care treatment was constitutionally deficient.

Herrera has not shown that it was clearly established that the hernia care she received violated the constitution.  As the defendants point out, the Ninth Circuit addressed the very same issue in *Hamby v. Hammond* when considering a state inmate's claim that prison officials violated his Eighth Amendment rights by delaying hernia-repair surgery and prescribing instead a hernia belt.[37]  The panel found that case law had not put it "'beyond debate' that the prison officials pursued a medically unreasonable course of treatment" for Hamby, so it affirmed the district court's grant of summary judgment in favor of the defendants based on qualified immunity.[38]  "Crucially for purposes of determining qualified immunity," it explained, "an examination of existing case law demonstrates that the non-surgical treatment the defendants selected is not indisputably unconstitutional in circumstances like these.  In fact, there are many cases, both reported and unreported, holding that prison medical personnel did not violate the Eighth Amendment even though they denied surgical treatment to an inmate with a reducible hernia comparable to Hamby's."[39]  "These cases—combined with a lack of overwhelming contrary authority—are dispositive for purposes of determining qualified immunity," the panel reasoned, "because they demonstrate that existing precedent does not place beyond debate the unconstitutionality of the course of non-surgical treatment pursued by the prison officials in Hamby's case."[40]

---

[37] *See* ECF No. 28 at 19 (citing *Hamby*, 821 F.3d at 1093–94).

[38] *Hamby*, 821 F.3d at 1093–94.

[39] *Id*. at 1094 (collecting cases).

[40] *Id*. (cleaned up).

1    *Hamby* demonstrates that it was not clearly established that the hernia care that Herrera

2    received violated the constitution.  Although Herrera contends that the defendants' conduct

3    "violated clearly established law," the primary law she cites is *Estelle v. Gamble* and *Farmer v.*

4    *Brennan*.[41]  *Estelle* and *Farmer* are seminal cases for the general deliberate-indifference

5    standards, but they're not hernia-care cases.  The Ninth Circuit has cautioned that the sort of

6    "clarity a plaintiff must demonstrate in order to overcome a defense of qualified immunity" is

7    high, and "defining the relevant right as simply the right to be free from deliberate indifference

8    'is far too general a proposition to control this case.'"[42]  The "dispositive question" is "whether

9    these officials, on these facts, should have known that what they did violated the Eighth

10   Amendment,"[43] and Herrera has not pointed to any sufficiently similar case that could suggest

11   that the defendants here should have.  So the defendants are entitled to qualified immunity from

12   her claim that their hernia-related care violated her Eighth Amendment rights.

13
14   ### 2.    *It was also not clearly established that the defendants' pap-smear-related care violated the constitution.*

15   For the same reason, the defendants are entitled to summary judgment on the delayed-

16   pap-smear-results portion of Herrera's deliberate-indifference claim based on qualified

17   immunity.  Herrera argues that the failure to inform her that her pap-smear test results were

18   abnormal and schedule a biopsy fell below constitutional standards.[44]  "Under clearly established

19   _____

20   [41] *See* ECF No. 38 at 16 (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994)).

21   [42] *Hamby*, 821 F.3d at 1094 (quoting *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015)).

22   [43] *Id*.

23   [44] Herrera denies that she got a biopsy, while the defendants claim (and the medical records indicate) that she did.  For purposes of this analysis, I credit Herrera's version of events.

law," she contends, "such conduct constitutes deliberate indifference," and she cites to *Estelle* for that general rule.[45]  Herrera also offers prison-medical-treatment cases involving drug withdrawals, gender-confirmation surgery, and the old one-good-eye policy for the proposition that courts have found deliberate indifference in "both [the] failure to treat and failure to inform" contexts.[46]

But again, these cases are too factually dissimilar to establish that any reasonable prison medical-care providers in the defendants' shoes would have known that they were violating the constitution in Herrera's course of care.  And because the record is devoid of evidence that Herrera suffered further injury[47] or "unnecessary and wanton infliction of pain" due to these delays, as required to prove a deliberate-indifference-to-serious-medical-needs claim, she can't even show that this conduct amounted to a constitutional violation.  So the defendants are entitled to summary judgment on the remainder of Herrera's Eighth Amendment claim based on qualified immunity.[48]

---

[45] *Id.*

[46] *See id.* at 11–12 (citing *Sandoval v. County of San Diego*, 985 F.3d 657 (9th Cir. 2021); *Edmo v. Corizon, Inc.*, 935 F.3d 757 (9th Cir. 2019); *Colwell v. Bannister*, 763 F.3d 1060 (9th Cir. 2014)).

[47] *See Stewart v. Aranas*, 32 F. 4th 1192 (9th Cir. 2022) (citing *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d. 404, 407 (9th Cir. 1985) ("A delay in treatment can violate the constitution if it results in injury").

[48] Because no substantive claim remains, there is no basis for an award of punitive damages.  So I need not and do not address the additional arguments regarding punitive damages.

1

**B.      Herrera's request for additional discovery under Federal Rule of Civil Procedure**
2      **56(d) is not supported.**

3          As her final argument, Herrera contends that "summary judgment should be denied or, in

4   the alternative deferred under Rule 56(d) to permit essential discovery."[49]  She contends that the

5   "lack of policy-level discovery regarding NDOC's treatment protocols and grievance

6   implementation[] precludes full factual development of the record necessary to oppose summary

7   judgment."[50]  She reports that "[n]o depositions have been taken.  No formal discovery has

8   probed the institutional practices of the Utilization Review Panel or the internal NDOC

9   mechanisms governing abnormal lab results.  Yet these are the very procedures Defendants

10  relied on to deny care, and the very decisions Herrera challenges as constitutionally infirm."[51]

11         But the blame for this total lack of discovery on essential issues falls entirely in plaintiff's

12  counsel's lap.   Herrera has been represented from the outset of this case by the same lawyer.

13  While plaintiff's counsel states that "discovery remains in its infancy,"[52] in truth, discovery cut

14  off on January 27, 2025, under the parties' stipulated scheduling order—a month before the

15  defendants filed their motion for summary judgment.[53]  So discovery was not "in its infancy"; it

16  was over.  As the defendants point out, plaintiff's counsel did not request to extend the discovery

17  period or otherwise indicate a need for additional time for discovery until now, and he hasn't

18  explained why he didn't pursue this discovery when the window was open.[54]  A party seeking a

19

---

20  [49] ECF No. 38 at 22.

21  [50] *Id.*

    [51] *Id.* at 23 (cleaned up).
22  [52] *Id.* at 24.

23  [53] ECF No. 23 at 2.

    [54] *Id.*

Rule 56(d) delay must show that it "diligently pursued its previous discovery opportunities,"[55] so the failure to meaningfully engage in the discovery process while it's happening is a good reason to deny Rule 56(d) relief.[56]

A second reason that Herrera's request now fails is that she hasn't satisfied the basic requirements for obtaining Rule 56(d) relief. The rule provides "a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence."[57] The movant must therefore show "(1) that [she has] set forth in affidavit form the specific facts that [she hopes] to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion."[58] Herrera hasn't done this. Although she attaches two declarations to her opposition—one from her lawyer and one from herself—neither mentions discovery or her Rule 56(d) request.[59] Because Herrera has failed to establish that she diligently pursued available discovery during the discovery period or that she satisfied the requirements for obtaining Rule 56(d) relief, I deny her request.

---

[55] *Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839, 844 (9th Cir. 1994).

[56] *See Cal. Union Ins. Co. v. Am. Diversified Sav. Bank*, 914 F.2d 1271, 1278 (9th Cir. 1990) (stating that, under former Rule 56(f), a district court may deny a request for further discovery if the movant has failed to pursue discovery in the past).

[57] *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002).

[58] *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008); *California v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998).

[59] *See* ECF Nos. 38-1 (Herrera dec.), 38-2 (Urrutia dec.).

1

**Conclusion**

2      IT IS THEREFORE ORDERED that the defendants' motion for summary judgment

3 **[ECF No. 28] is GRANTED**.  The Clerk of Court is directed to **ENTER JUDGMENT in favor**

4 **of defendants Timothy Calumpong, Betty Omandac, Ella Cordovez, and Gabriela Najera**

5 on plaintiff's remaining claims and **CLOSE THIS CASE**.

6

7
                       _____
                       U.S. District Judge Jennifer A. Dorsey

8
                                September 9, 2025

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23